UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>v.<br><br>MICHAEL H. HENSLEY, JR.,<br>                        Defendant. | Case No. 22-cr-20290<br>Honorable Shalina D. Kumar<br>Magistrate Judge Curtis Ivy, Jr. |

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS, FOR JUDGMENT OF ACQUITTAL, OR FOR NEW TRIAL (ECF NO. 38)**

## I.    Introduction

This matter comes before the Court on Defendant Michael H. Hensley, Jr.'s motion to dismiss, for judgment of acquittal, or for new trial. ECF No. 38. The Government filed a response to the motion. ECF No. 43. Hensley filed a reply. ECF No. 45. The Court heard oral argument at a hearing held on June 8, 2023, and this matter is now ripe for determination. For the reasons stated below, Hensley's motion is DENIED.

## II.    Factual Background

On February 2, 2023, after a three-day trial, a jury convicted Hensley of one count of Prohibited Person in Possession of a Firearm in violation of

18 U.S.C. § 922(g)(1). ECF No. 32. At trial the parties presented evidence of the following facts:

On April 2, 2022, Hensley found and kept a handgun that his friend dropped in Hensley's car. ECF No. 41, PageID.386-87. Hensley showed the gun to his girlfriend, Kimberly Black, and throughout that day either kept it on himself or on Black. *Id.* at PageID.386-407. For example, one time he pulled the gun out from his front jean pocket to show the gun to friends, and another time he stowed the gun in Black's jacket pocket so that he could ask for it later. *Id.* at Page ID.400-07.

Around 11:30 p.m. that night, Hensley was driving in his car with Black as passenger. *Id.* at PageID.410-11; ECF No. 40, PageID.209. After determining that Hensley's car had a stolen license plate, Michigan State Police Troopers Merik Whipple and Dakota Card pulled Hensley's car over. ECF No. 40, PageID.189. While the car was stopped, Hensley handed Black the gun and drove off. ECF No. 41, PageID.412-14. A car chase ensued. *Id.* at PageID.415-16.

Troopers Whipple and Card used their patrol vehicle to hit Hensley's car, stopping the car chase. *Id.* at PageID.416. Black lost the gun and did not know where it went. *Id.* at PageID.417. When Hensley's car stopped, Trooper Whipple blocked Hensley's passenger side door with his patrol

vehicle. ECF No. 40, PageID.194-95. First Hensley and then Black left the car from the drivers' side. ECF No. 41, PageID.289, 358. Hensley ran away from the scene, while Black moved back and forth near Hensley's car. *Id.* at PageID.289, 359. Both Hensley and Black were soon arrested. ECF No. 40, PageID.196; ECF No. 41, PageID.362-63. Trooper Whipple found the gun on the driver's seat and without gloves grabbed it and cleared the chamber of ammunition. ECF No. 40, PageID.203-05.

Michigan State Police laboratory policy bars DNA or fingerprint testing for firearms found on a person or in their vehicle. ECF No. 41, PageID.307. Trooper Whipple did not submit the gun for DNA or fingerprint testing because the gun would not have been accepted for such testing under the laboratory policy. ECF No. 40, PageID.207-08.

### III.  Analysis

#### A. Motion to Dismiss

Hensley moves to dismiss based on three due process arguments, all based on the Government's failure to preserve and test the gun for DNA or fingerprints.

Federal Rule of Criminal Procedure 12(b) governs motions to dismiss and provides that a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial. Fed. R.

Crim. P. 12(b)(1). Subsection (b)(3) provides that specific defenses, objections, and requests, including those pertaining to suppression of evidence and discovery, "must be raised by pretrial motion." If such a motion is not made before a deadline set by the Court or otherwise before trial, the motion is untimely. Fed. R. Crim. P. 12(c)(3).

As an initial matter, the Government argues that Hensley's motion to dismiss is untimely because Hensley could have but did not raise before trial the preservation and testing issues his motion now raises. Hensley replies that he may file his motion to dismiss post-trial because Rule 12 does not list Hensley's motion as the kind that must be brought pretrial.

The Court finds that the motion to dismiss is timely because Hensley was not required to make his motion before the trial. Rule 12(b)(3) does not specifically list the preservation and testing issues raised here as ones that must be brought pretrial. Further, under "Rule 12(b), 'suppress' has a rather definite and limited meaning," not applicable here. *United States v. Barletta*, 644 F.2d 50, 54 (1st Cir. 1981). Accordingly, the Court does not deem this motion as one for suppression or discovery, which must be raised pretrial. Because the motion is timely, the Court considers each of Hensley's arguments for dismissal in turn.

### 1. The Government's failure to preserve and test the gun did not violate Defendant's right to present a complete defense.

Under the Due Process Clause of the Fourteenth Amendment, criminal defendants must be afforded a meaningful opportunity to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485 (1984). A defendant's right to present a complete defense does not mean that the government must ensure all relevant evidence is accessible. *United States v. Agurs*, 427 U.S. 97, 109 (1976).

Instead, a defendant is generally entitled to access evidence that might play a "significant role" in his defense. *Trombetta*, 467 U.S. at 488. More specifically, a defendant's right to present a complete defense includes his right to favorable evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), and the right to access exculpatory or potentially useful evidence under *Trombetta*, 467 U.S. at 479, and *Arizona v. Youngblood*, 488 U.S. 51 (1988).

Hensley argues he could not meaningfully present a complete defense because the Government failed to preserve and test the gun for DNA and fingerprints. The Government counters that Hensley's defense would not have changed had the gun been preserved and tested.

The gun's lack of preservation and testing did not bar Hensley from presenting a complete defense, in part because evidence from the gun's preservation and testing would not have played a significant role in his defense. To support his defense that he did not possess the gun, Hensley argued that no DNA or fingerprint evidence linking Hensley to the gun was produced and that no direct evidence other than Black's testimony showed possession. ECF No. 40, PageID.176; ECF No. 42, PageID.545-47, 549, 555. In Hensley's best-case scenario, the gun's preservation and testing would show that Hensley's DNA or fingerprints were not found on the gun. Such a negative test result would bolster Hensley's defense that he did not possess the gun. But it would not conclusively prove Hensley's defense because a variety of factors, such as how evidence was collected, stored, or analyzed, could make a DNA or fingerprint test result negative.

Moreover, as explained below, under *Brady*, *Trombetta*, and *Youngblood*, the Government's failure to preserve and test the gun did not violate Hensley's right to present a complete defense.

### 2. The Government did not violate Defendant's rights under *Brady*.

Hensley argues the failure to preserve and test the gun constitutes a *Brady* violation. The Government contends there was no *Brady* violation because it suppressed no evidence.

Under *Brady*, the prosecution must disclose exculpatory or impeachment evidence that is material either to guilt or to punishment. 373 U.S. at 87. The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985). To establish a *Brady* violation, a defendant must prove that (1) the government suppressed evidence, either willfully or inadvertently; (2) the evidence was favorable to the defense, either because it is exculpatory or because it is impeaching; and (3) prejudice ensued. *Jalowiec v. Bradshaw*, 657 F.3d 293, 303 (6th Cir. 2011).

Here, the Government did not suppress any evidence. By failing to preserve and test the gun, the Government did not fail to disclose evidence that it possessed. Rather, it prevented Hensley from obtaining uncontaminated DNA and fingerprint evidence from the gun. However, the Government had no duty to obtain any DNA or fingerprint evidence for Hensley when the Government did not itself possess such evidence. *See United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007). The Government therefore did not violate Hensley's rights under *Brady*.

### 3. Defendant was not otherwise guaranteed preservation and testing of the gun.

To safeguard a defendant's due process right to present a complete defense, the Supreme Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence." *Trombetta*, 467 U.S. at 485. To determine whether the government's failure to preserve evidence constitutes a due process violation, a court applies separate tests depending on whether the evidence at issue is material and exculpatory or only "potentially useful." *United States v. Wright*, 260 F.3d 568, 570 (6th Cir. 2001).

Under *Trombetta*, where material, exculpatory evidence is at issue, the government's failure to preserve the evidence violates due process if the evidence had an exculpatory value that was apparent before the evidence was destroyed, and no other comparable evidence is reasonably available. 467 U.S. at 489. Whether the government acted in bad faith is irrelevant. *Wright*, 260 F.3d at 570.

Under *Youngblood*, where "potentially useful" evidence is at issue, the government's failure to preserve evidence violates due process if (1) it failed to preserve the evidence in bad faith; (2) the evidence's exculpatory value was apparent before its destruction; and (3) no other comparable evidence is reasonably available. *Jobson*, 102 F.3d at 218 (citing

*Youngblood*, 488 U.S. at 57-58). To establish bad faith, a defendant must prove official animus or a conscious effort to suppress exculpatory evidence. *Id.* Bad faith "necessarily turn[s] on the government actor's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Wright*, 260 F.3d at 571 (brackets omitted).

Evidence is material and exculpatory if it would have exonerated a defendant or at least contributed to his defenses. *Youngblood*, 488 U.S. at 57; *see Trombetta*, 467 U.S. at 485. Evidence is potentially useful if "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57.

The Court applies the *Youngblood* test. As Hensley contends, the gun could have been preserved and subjected to tests, and the test result could have supported Hensley's defense. But to go further and say that the test results would have supported Hensley's defense is "mere speculation." *Jobson*, 102 F.3d at 219.

Hensley focuses his argument on the Government's bad faith, contending that the Government's failure to preserve and test the gun was done in bad faith because it was based on assumptions of Hensley's guilt and efforts to gain an advantage at trial. The Government counters that the

gun was not preserved and tested due to state laboratory policy, not bad faith.

The Government's failure to preserve the gun was not done in bad faith. *See Jobson*, 102 F.3d at 218. Trooper Whipple grabbed the gun without gloves because the gun would not have been tested under state laboratory policy. ECF 40, PageID.208. Further, even if Trooper Whipple grabbed the gun while assuming Hensley's guilt, nothing suggests that Trooper Whipple knew the gun had exculpatory value when he grabbed it. And because the Government "do[es] not have a constitutional duty to perform any particular tests," failing to test the gun for DNA or fingerprints did not violate due process. *Youngblood*, 488 U.S. at 59 (stating police have no duty to perform semen sample or breathalyzer tests).

The Court finds each of Hensley's due process arguments unavailing and therefore denies the motion to dismiss.

### B. Motion for Judgment of Acquittal

Hensley also moves for a judgment of acquittal. Under Federal Rule of Criminal Procedure 29, a court must grant a judgment of acquittal if there is insufficient evidence to sustain a conviction. *United States v. Wallace*, 597 F.3d 794, 800 (6th Cir. 2010). The relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Id.* In making this determination, a court views the evidence in the light most favorable to the prosecution and does not judge the credibility of witnesses or weigh evidence. *United States v. Ostrander*, 411 F.3d 684, 691 (6th Cir. 2005).

Hensley argues the evidence is insufficient to sustain his conviction because no direct evidence showed possession. The Government counters that the evidence, including eyewitness testimony that Hensley possessed the gun, supports Hensley's conviction.

The evidence sufficiently sustains Hensley's conviction. A rational juror could find possession beyond a reasonable doubt. Black's testimony details how Hensley found the gun and kept it either on himself or on Black. *See* ECF No. 41, PageID.386-407. Black's testimony constitutes direct evidence that Hensley had actual, joint, or constructive possession of the gun. Without judging Black's credibility, the Government adduced sufficient evidence to support Hensley's conviction. *See United States v. Stewart*, 628 F.3d 246, 255 (6th Cir. 2010). The Court thus denies the motion for judgment of acquittal.

### C. Motion for New Trial

Finally, Hensley moves for a new trial. Upon the defendant's motion, a court may grant a new trial if the interest of justice so requires. Fed. R.

Crim. P. 33. A court may grant such a motion if "the jury's verdict was against the manifest weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007). Such motions are granted only "in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *Id.* at 593. In making this determination, a judge "may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *Id.*

Hensley argues the evidence manifestly weighs against the jury's verdict because Black lacks credibility, she was last to leave the car, and no direct evidence otherwise shows that Hensley possessed the gun. The Government counters by pointing to Black's testimony under penalty of perjury about Hensley's possession of the gun, jail calls that corroborate Black's testimony, and Hensley's flight from the car and state troopers.

The evidence does not manifestly weigh against the jury's verdict. Although no physical or scientific evidence exists to show Hensley's possession of the gun, there is both circumstantial and direct evidence weighing in favor of the verdict. In particular, Black's testimony about Hensley finding the gun, keeping it on himself and on Black, and handing it to Black before the car chase directly shows Hensley's possession. The

jury found Black's testimony credible and so does the Court for purposes of Hensley's motion. The Court therefore denies the motion for new trial.

## IV. Conclusion

For these reasons, Hensley's motion to dismiss, for judgment of acquittal, or for new trial (ECF No. 38) is **DENIED**.

Dated: June 28, 2023

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge